MARC J. WINTHROP – State Bar No. 63218
mwinthrop@winthropcouchot.com
SEAN A. O'KEEFE – State Bar No. 122417
sokeefe@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

In re

☐ BACCHUS DEVELOPMENT, INC.
☐ BACCHUS INVESTMENT GROUP, LLC
☐ BACCHUS COMMERCIAL, LLC

☒ All Debtors

          Debtor and Debtor-in-
          Possession.

Case No.   8:09-19457 RK
Jointly Administered with Case Nos.
8:09-19460 RK; and 8:09-15462 RK

Chapter 11 Proceedings

**DEBTORS' EMERGENCY MOTION FOR ORDER (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT UNDER SECTION 366 OF THE BANKRUPTCY CODE**

DATE:  [To Be Set]
TIME:
PLACE: Ctrm. "5D"

Bacchus Investment Group, LLC, a California limited liability company ("Investment" or the "Debtor"), debtor and debtor-in-possession herein, and related debtors Bacchus Commercial, LLC ("Commercial") and Bacchus Development ("Development") (collectively the "Bacchus Debtors") hereby move the Court, <u>on an emergency basis</u>, for an order granting the following relief:

A)  Prohibiting utilities from altering, refusing or discontinuing service to the Bacchus Debtors;

B)  Deeming the utilities adequately assured of future performance based upon their receipt of a deposit equal to one month's usage, with this being calculated based upon the applicable Bacchus Debtors' motion recent monthly bill;

C)  Providing that any utility that seeks to contest this order is only authorized to do so in compliance with the Adequate Assurance Procedures as that term is described and defined herein; and

D)  Such further relief as the Court deems just and proper.

This Motion is made on the basis of the appended Declaration of Steven M. Bren, the within points and authorities, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

DATED: September 11, 2009

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By: /s/ Sean A. O'Keefe
_____
Marc J. Winthrop
Sean A. O'Keefe
[Proposed] Insolvency Counsel for Debtor and Debtor-in-Possession

MAINDOCS-#133598-v1-BacchusUtilityMtn.DOC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF

On September 4, 2009 (the "Petition Date"), the Bacchus Debtors filed petitions under Chapter 11 of the United States Bankruptcy Code. The Bacchus Debtors core business is the construction, management and sale of commercial real estate assets.

Collectively, the Bacchus Debtors own fifty-four commercial buildings and a single family home. Forty-three of the commercial buildings (the "BC Buildings") are owned by Commercial. All of these buildings are actively being marketed for sale. Four of these forty-three buildings are leased to third party tenants. Eleven buildings are owned by Investment (the "BIG Buildings"). All of the BIG Buildings are leased to third parties.

In order to preserve the value of the BC Buildings and the BIG Buildings, the Bacchus Debtors must insure that gas, water, electric, telecommunications and other services currently being provided by various utility companies (the collectively the "Utility Providers") continue in the ordinary course. Since any interruption in utility service would disrupt the Bacchus Debtors' operations and impair the Debtors' ability to reorganize their financial affairs, the relief prayed for herein is necessary on an emergency basis.

## II

## GENERAL BACKGROUND FACTS

A.  **The Debtor and Related Entities.** During the last five years Bacchus Debtors have developed the following three projects in Irvine, California that are relevant to the pending Chapter 11 cases:

    A.  **Bacchus Office Park.** Bacchus Office Park ("BOP") is a twenty-two acre office park located at the intersection of Irvine Center Drive and Bake Parkway in Irvine, California that was improved with seventy-nine commercial buildings and condominium units ranging in size from 1,000 to 20,000 square feet. All of the buildings within BOP are located on separately deeded parcels of land and they have all been sold. The eleven buildings owned by the Debtor are located within BOP.

   B. <u>Jeffrey Office Park</u>. Jeffrey Office Park ("JOP") is a twenty acre office park located at the intersection of Jeffrey Road and the Interstate 5 freeway. Commercial built fifty buildings within this park ranging in size from 5,000 square feet to 20,000 square feet. All of the buildings within JOP are located on separately deed parcels. Eighteen of the buildings within JOP have been sold. Commercial holds title to the remaining thirty-two buildings, four of which are leased and the others are actively being offered for sale.

   The thirty-two within JOP that are owned by Commercial are subject to a first priority lien in favor of Union Bank. This lien secures the approximate sum of $43,000,000 owing under the terms of that certain *Construction Loan* dated July 7, 2006, entered into by and between Union Bank as lender and agent, and Commercial as borrower (the "JOP Loan"). Mr. Bren and Development executed a payment guaranty in favor of Union Bank as additional security for the JOP Loan.

   C. <u>Bacchus Signature Series</u>. Bacchus Signature Series ("BSS") is an eighteen acre office park located at the intersection of Irvine Center Drive and Lake Forest Drive. Commercial built forty buildings within this park ranging in size from 5,000 square feet to 10,000 square feet. All of the buildings within BSS are located on separately deed parcels. Twenty nine of the buildings within BSS have been sold. Commercial holds title to the remaining eleven buildings. Two of these building have been leased to third parties. The nine other buildings are vacant and they are actively being offered for sale.

   The eleven buildings within BSS that are owned by Commercial are subject to a first priority lien in favor of Union Bank. This lien secures the approximate sum of $12,000,000 owing under the terms of that certain Construction Loan dated November 10, 2006, entered into by and between Union Bank as lender and agent, and Commercial as borrower (the "BSS Loan"). Mr. Bren and Development executed a payment guaranty in favor of Union Bank as additional security for the BSS Loan.

   **B.** **Events Precipitating The Chapter 11 Filing**. The severe decline in economic conditions experienced both nationally and locally in late 2008, coupled with the near collapse of the national credit markets in late 2008, reduced both sales velocities and pricing at both BSS and

JOP. Although units have continued to sell within both parks, and the balances due under the terms of both the JOP Loan and the BSS Loan have been and continued to reduced through sales (collectively, by over $40,000,000) the BSS Loan matured in May of 2009, with a balance remaining unpaid. Although efforts were made to negotiate a reasonable forbearance arrangement with Union Bank, these efforts were unsuccessful. The bank elected to declare a default under all three of its loan arrangements and to pursue its enforcement remedies. This forced the Bacchus Debtors to file the instant Chapter 11 proceedings in order to obtain a breathing spell within which to reorganize their affairs.

   **C.    The Adequate Assurance Procedures.** In order to provide a future means for any affected Utility Provider to seek relief from this Court based upon the contention that future payment is not adequately assured, the Bacchus Debtors are proposing the following procedural recourse (the "Adequate Assurance Procedure"):

- absent further order of this Court and except as otherwise provided herein, the Utility Providers may not alter, refuse or discontinue service to, or discriminate against, the Bacchus Debtors on account of the commencement of these chapter 11 cases or any unpaid pre-petition charges, or request payment of a deposit or receipt of other security in connection with any unpaid pre-petition charges, except as provided for herein;
- the Bacchus Debtors will serve the Motion and an order granting the Motion on an interim basis, if granted by the Court, via first-class mail, within three (3) business days after the date that the order is entered by the Court, on all Utility Providers identified on Exhibit "1" attached to the Declaration; provided that for any Utility Provider that may have been omitted from Exhibit "1" to the Declaration, the Bacchus Debtors shall have the right to supplement such list of Utility Providers and shall promptly provide notice of the order upon learning of such Utility Provider;
- a Utility Provider may request assurance of payment within thirty (30) days after the Petition Date (an "Assurance Request") by submitting an Assurance

Request to (i) Winthrop Couchot, P.C., 660 Newport Center Drive, Suite 400, Newport Beach, California 92660, Attn: P.J. Marksbury;

- any Assurance Request must (i) be made in writing and (ii) include a summary of the Bacchus Debtors' payment history relevant to the affected account(s);
- if a Utility Provider makes a timely Assurance Request that the Bacchus Debtors believe is reasonable, then the Bacchus Debtors shall be authorized in their sole discretion to comply with such request without further order of the Court;
- if the Bacchus Debtors believe the Assurance Request is unreasonable, the Bacchus Debtors will schedule a hearing to determine if assurance to such Utility Provider is necessary (the "Determination Hearing");
- pending resolution of that issue at any such Determination Hearing, any Utility Provider making an Assurance Request shall be prohibited from altering, refusing or discontinuing service to the Bacchus Debtors; and
- a Utility Provider shall be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further adequate assurance of payment.

Although the Bacchus Debtors believe that the list of Utility Providers attached as Exhibit "1" to the Bren Declaration is a complete list, the Bacchus Debtors reserve the right, without further order of the Court, to supplement the list if any Utility Provider has been inadvertently omitted. If the Bacchus Debtors supplement the list subsequent to the filing of this Motion, the Bacchus Debtors will promptly serve a copy of this Motion, and the signed Order, on any Utility Provider that is added to the list by such a supplement. Concurrently with such service, the Bacchus Debtors will file with the Court a supplement to Exhibit "2" to the Declaration adding the name of the Utility Provider so served. Such an added Utility Provider shall have thirty (30) days from the date of service of this Motion and the order to make an Assurance Request. If such an Assurance Request is made, the Bacchus Debtors shall abide by the procedures set forth above,

as applicable. Pending resolution of any Determination Hearing relating to an Assurance Request, the Bacchus Debtors may seek an order prohibiting any such Utility Provider from altering, refusing or discontinuing utility services to the Bacchus Debtors.

## III

## BASIS FOR RELIEF UNDER SECTION 366 OF THE BANKRUPTCY CODE

Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy. Pursuant to this section, a utility may not, during the first twenty (20) days of the case, alter, refuse, or discontinue services to a debtor in a chapter 11 case solely because of unpaid pre-petition amounts. However, the utility may subsequently do so unless the debtor (as the Bacchus Debtors are doing pursuant to this Motion) furnishes "adequate assurance" of payment, in the form of a deposit or otherwise, for post-petition services in a form "satisfactory" to the utility within 30 days of the Petition Date.[1]

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, courts, commentators, and legislative history had all confirmed that section 366 does not require, in every case, that the debtor provide a deposit or other security to its utilities as adequate assurance of payment. In <u>Virginia Electric & Power Co. v. Caldor, Inc.</u>, 117 F.3d 646, 648-49 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit affirmed the bankruptcy court's ruling that the debtor's pre-petition payment history, its post-petition liquidity, and the

---

[1] Section 366 states in pertinent part:
(a) Except as provided in subsection (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
***
(c)(2) subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.
(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
11 U.S.C. § 366.

administrative expenses afforded post-petition invoices constituted adequate assurance of future performance. See also In re Pacific Gas & Elec. Co., 271 B.R. 626, 644-45 (N.D. Cal. 2002) (upholding the bankruptcy court's finding that the debtor's likelihood of performance and availability of resources provided adequate assurance); Shirley v. Philadelphia Elec. Co. (In re Shirley), 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("section 366(b) ... does not permit a utility to request adequate assurance of payment for continued services unless there has been a default by the debtor on a pre-petition debt owed for services rendered").

Under the present version of Section 366(c) of the Bankruptcy Code, however, in a chapter 11 case, a utility company may alter, refuse, or discontinue utility service if within 30 days after the commencement of the chapter 11 case, the utility company does not receive adequate assurance in a form that is "satisfactory" to the utility company, subject to the Court's ability to modify the amount of adequate assurance. Further, under section 366(c), in making a determination of whether an assurance of payment is adequate, the Court may not consider (i) the absence of security before the petition date, (ii) the debtor's history of timely payment or (iii) the availability of an administrative expense priority to the utility company.

While the form of adequate assurance of payment may be limited under new subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), **the amount of the deposit or other form of security remains fully within the reasonable discretion of the Court.**[2] It has been well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. Instead, the protection granted to a utility is intended to avoid exposing the utility to an unreasonable risk of nonpayment. In Adelphia Business Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002), the Bankruptcy Court for the Southern District of New York stated that "[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for post-

---

[2] 11 U.S.C. § 366(b) provides: "On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."
Similarly, 11 U.S.C. § 366(3)(A) provides: "On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."

petition services." The essence of the Court's inquiry is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. Id. at 82-83. See also In re Magnesium Corp. of America, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.").

> Adequate assurance of payment does not require an absolute guarantee of payment; instead, what is required is that the utility be protected from an unreasonable risk of future loss or nonpayment.
> The Bankruptcy Court is granted reasonable discretion in determining what constitutes adequate assurance of payment for future service. ***
> The terms of adequate assurance of payment should not be such a financial burden upon the debtor as to thwart or deter rehabilitation potential, and thereby be an unreasonable demand. Thus, when the adequate assurance issue arises in the context of a reorganization proceeding, the Bankruptcy Court must concern itself with the success of the rehabilitative process. The court may also consider the probability of payment through the bankruptcy proceedings.

9B Am. Jur. 2d Bankruptcy § 1788 (2005).

Here, the Bacchus Debtors propose to protect the Utility Providers further by providing a one month deposit and by establishing the Adequate Assurance Procedures provided for herein, whereby any Utility Provider can request adequate assurance in the event that it believes there are facts and circumstances with respect to its providing post-petition services to the Bacchus Debtors that would merit greater protection.

As set forth above, the Bacchus Debtors cannot continue to perform without continued utility services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption could have a devastating impact on the Bacchus Debtors' going concern value and ability to reorganize. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all post-petition utility charges. It is therefore critical that utility services continue uninterrupted.

This Court also has the authority to grant the relief requested herein pursuant to

section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy court[']s power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2001). Because the proposed Procedures protect the Debtors and the Utility Providers, they carry out section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under Section 105(a) of the Bankruptcy Code.

## IV

## THE RELIEF REQUESTED HEREBY IS
## JUSTIFIED ON AN EMERGENCY BASIS

Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure provides that, for "cause shown," a bankruptcy court may reduce the time periods provided for service in the Bankruptcy Rules, except as to the time periods provided in Rule 9006(c)(2). Since the time period at issue in this Motion is not one of those listed in Rule 9006(c)(2), this Court has the power to grant the relief prayed for herein on an "emergency" basis. As set forth in detail in the Declaration, cause exists for authorizing the relief requested herein on an emergency basis.

## V

## THE NOTICE GIVEN OF THIS MOTION IS APPROPRIATE
## UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE

The Bacchus Debtors have served a copy of this Motion on all secured creditors, the unsecured creditors holding the 20 largest claims against the Debtors and the Office of the United States Trustee. The Debtors respectfully submit that such notice is appropriate and comports with the requirements of the Federal Rules of Bankruptcy Procedure ("FRBP") and the Local Bankruptcy Rules ("LBR"). See, Rule 2002 of the FRBP; Rule 9006(c) of the FRBP; Rule 9075-1(a) of the LBR.

# VI

# **CONCLUSION**

Based upon the foregoing, the Bacchus Debtors would respectfully request that the Court entered its order granting the relief requested herein, and granting to the Debtors such other and further relief as is just and appropriate under the circumstances of this case.

DATED: September 11, 2009

Winthrop Couchot
Professional Corporation

By: /s/ Sean A. OKeefe
Sean A. OKeefe, attorneys for
the Debtor and Debtor-in-Possession

## DECLARATION OF STEVEN M. BREN

I, Steven M. Bren, hereby declare and state as follows:

1. I am the President of Bacchus Development, a California corporation ("Development"). Development is the sole member and manager of both Bacchus Commercial, LLC ("Commercial") and Bacchus Investment Group, LLC ("Investment") (collectively the "Bacchus Debtors").

2. The facts stated herein are within my personal knowledge, and if called upon to testify to such facts I could and would testify competently thereto.

3. In my role as President and founder of the Bacchus Debtors, I have been responsible for overseeing the operations and financial performance of these entities.

4. The books and records of the Bacchus Debtors are prepared and maintained in the ordinary course of business in a consistent and business-like manner. Accordingly, the information therein is accurate and reliable.

5. On September 4, 2009 (the "Petition Date"), the Bacchus Debtors filed petitions under Chapter 11 of the United States Bankruptcy Code. The Bacchus Debtors' core business is the construction, management and sale of commercial real estate assets.

6. During the last five years Bacchus Debtors have developed the following three projects in Irvine, California that are relevant to the pending Chapter 11 cases:

   A. <u>Bacchus Office Park</u>. Bacchus Office Park ("BOP") is a twenty-two acre office park located at the intersection of Irvine Center Drive and Bake Parkway in Irvine, California that was improved with seventy-nine commercial buildings and condominium units ranging in size from 1,000 to 20,000 square feet. All of the buildings within BOP are located on separately deeded parcels of land and they have all been sold. The eleven buildings owned by the Debtor are located within BOP.

   B. <u>Jeffrey Office Park</u>. Jeffrey Office Park ("JOP") is a twenty acre office park located at the intersection of Jeffrey Road and the Interstate 5 freeway. Commercial built fifty buildings within this park ranging in size from 5,000 square feet to 20,000 square feet. All of the buildings within JOP are located on separately deed parcels. Eighteen of the buildings within JOP

have been sold. Commercial holds title to the remaining thirty-two buildings, two of which are leased and the others are actively being offered for sale.

The thirty-two within JOP that are owned by Commercial are subject to a first priority lien in favor of Union Bank. This lien secures the approximate sum of $43,000,000 owing under the terms of that certain *Construction Loan* dated July 7, 2006, entered into by and between Union Bank as lender and agent, and Commercial as borrower (the "JOP Loan"). Mr. Bren and Development executed a payment guaranty in favor of Union Bank as additional security for the JOP Loan.

C. <u>Bacchus Signature Series</u>. Bacchus Signature Series ("BSS") is an eighteen acre office park located at the intersection of Irvine Center Drive and Lake Forest Drive. Commercial built forty buildings within this park ranging in size from 5,000 square feet to 10,000 square feet. All of the buildings within BSS are located on separately deed parcels. Twenty nine of the buildings within BSS have been sold. Commercial holds title to the remaining eleven buildings. Two of these building have been leased to third parties. The nine other buildings are vacant and they are actively being offered for sale.

The eleven buildings within BSS that are owned by Commercial are subject to a first priority lien in favor of Union Bank. This lien secures the approximate sum of $12,000,000 owing under the terms of that certain Construction Loan dated November 10, 2006, entered into by and between Union Bank as lender and agent, and Commercial as borrower (the "BSS Loan"). Mr. Bren and Development executed a payment guaranty in favor of Union Bank as additional security for the BSS Loan.

7. The severe decline in economic conditions experienced both nationally and locally in late 2008, coupled with the near collapse of the national credit markets in late 2008, reduced both sales velocities and pricing at both BSS and JOP. Although units have continued to sell within both parks, and the balances due under the terms of both the JOP Loan and the BSS Loan have been and continued to reduced through sales (collectively, by over $40,000,000) the BSS Loan matured in May of 2009, with a balance remaining unpaid. Although efforts were made to negotiate a reasonable forbearance arrangement with Union Bank, these efforts were unsuccessful.

1  The bank elected to declare a default under all three of its loan arrangements and to pursue its
2  enforcement remedies. This forced the Bacchus Debtors to file the instant Chapter 11 proceedings
3  in order to obtain a breathing spell within which to reorganize their affairs.

4      8.    In order to preserve the value of the BC Buildings and the BIG Buildings, the
5  Bacchus Debtors must insure that gas, water, electric, telecommunications and other services
6  currently being provided by various utility companies (the collectively the "Utility Providers")
7  continue in the ordinary course. Since any interruption in utility service would disrupt the
8  Bacchus Debtors' operations and impair the Debtors' ability to reorganize their financial affairs,
9  the relief prayed for is necessary on an emergency basis.

10      9.    Attached hereto as Exhibit "1" is a list of the Utility Providers providing various
11  utility services to the Bacchus Debtors.

12  I declare that the foregoing is true and correct under the penalty of perjury.

13  Executed this 11th day of September, 2009, in Orange County, California.


Steven M. Bren

# EXHIBIT "1"

| |
|---|
| **Utility**<br>AT & T<br>Attn: Corporate Officer<br>Sacramento, CA 95887-0001 |
| **Utility**<br>Cox Communications<br>Attn: Paul Orona/Marcia Davis<br>29947 Avenida De Las Banderas<br>Rancho Santa Margarita, CA 92688 |
| **Utility**<br>Irvine Ranch Water District<br>Attn: Authorized Agent<br>PO Box 57000<br>Irvine, CA 92619-7000 |
| **Utility**<br>Southern California Edison<br>Attn: Bankruptcy Desk<br>300 N. Lone Hill Ave.<br>San Dimas, CA 91773 |
| **Utility**<br>DirecTV<br>Attn: Corporate Officer<br>PO Box 60036<br>Los Angeles, CA 90060-0036 |
| **Utility**<br>AT&T Mobility<br>Attn: Corporate Officer<br>PO Box 6463<br>Carol Stream, IL 60197-6463 |

# EXHIBIT "1"

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as **DEBTORS' EMERGENCY MOTION FOR ORDER (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT UNDER SECTION 366 OF THE BANKRUPTCY CODE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 18, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On September 18, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

September 18, 2009    Susan Connor    _____
_Date_                    _Type Name_            _Signature_

-15-

MAINDOCS-#133598-v1-BacchusUtilityMtn.DOC

## NEF SERVICE LIST

- Richard W Brunette    rbrunette@sheppardmullin.com
- Jesse S Finlayson    jfinlayson@faw-law.com, wmills@faw-law.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Garrick A Hollander    sconnor@winthropcouchot.com
- Sean A Okeefe    sokeefe@okeefelc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop    pj@winthropcouchot.com

## OVERNIGHT SERVICE LIST

| | | |
|---|---|---|
| Bacchus Group<br>Steven M. Bren<br>8801 Research Drive<br>Irvine, CA 92618 | U.S. Trustee's Office<br>Michael Hauser, Esq.<br>411 West Fourth Street<br>Santa Ana, CA 92701 | Bacchus Group<br>Combined Secured/20Largest<br>Document No.133249 |
| Union Bank of California<br>Real Estate Industries<br>Michael S. Samuel, VP<br>18300 Von Karman Ave., #340<br>Irvine, CA 92612 | Counsel to Secured Creditor<br>Sheppard Mullin Richter & Hampton LLP<br>Richard W. Brunette, Esq.<br>Aaron J. Malo, Esq.<br>333 South Hope St., 43rd Fl.<br>Los Angeles, CA 90071-1448 | |
| Aetna Attn: Irene Krinsky<br>c/o Azonic Insurance Agency<br>1617 Westcliff Dr., #211<br>Newport Beach, CA 92660 | **Utility**<br>Cox Communications<br>Attn: Paul Orona/Marcia Davis<br>29947 Avenida De Las Banderas<br>Rancho Santa Margarita, CA 92688 | Jeffrey Ofc Pk Onrs Assn<br>c/o Mar West RE-Craig Stevens<br>P.O. Box 500608<br>San Diego, CA 92150-0608 |
| American Express<br>Attn: Corporate Officer<br>P.O.Box 297813<br>Ft. Lauderdale, FL 33329-9785 | De Lage Landen Financial Services<br>Attn: 000000000407407/Crp Ofcr<br>P.O. Box 41601<br>Philadelphia, PA 19101-1601 | KPRS Construction Services<br>Attn: Lev Rabinovich<br>2850 Saturn Street<br>Brea, CA 92821 |
| Arrowhead<br>Attn: Corporate Officer<br>P.O.Box 52237<br>Phoenix AZ 85072-2237 | Delta Dental Atn Irene Krinsky<br>c/o Azonic Ins Agency<br>1617 Westcliff Dr., #211,<br>Newport Beach, CA 92660 | Lead Tracking Solutions<br>Attn: Karen Tyler<br>3188-L Airway Avenue<br>Costa Mesa, CA 92626 |
| **Utility**<br>AT & T<br>Attn: Corporate Officer<br>Sacramento, CA 95887-0001 | First American Title<br>Attn: Ed Luque Acc Rec Dept<br>5 First American Way<br>Santa Ana, CA 92707 | Lee & Associates<br>Attn: Rob Rader<br>7700 Irvine Center Drive<br>Irvine, CA 92618 |
| Bacchus Ofc Pk Atn C. Stevens<br>Bacchus Signature Atn C. Stevens<br>Brenexus c/o Com In Attn C. Stevens<br>c/o Mar West Real Estate<br>PO Box 500608<br>San Diego, CA 92150-0608 | GE Capital<br>Attn: Corporate Officer<br>P.O.Box 31001-0271<br>Pasadena Ca 91110-0271 | Los Angeles Times.<br>Attn: Johnathan Mundez<br>P.O.Box 60185<br>Los Angeles, CA 90060-0185 |

| | | |
|---|---|---|
| Churm Publishing<br>Attn: Jill Perisich<br>1451 Quail St., #201<br>Newport Beach, CA 92660 | **Utility**<br>Irvine Ranch Water District<br>Attn: Authorized Agent<br>PO Box 57000<br>Irvine, CA 92619-7000 | Lucid Fusion<br>Attn: Zaynab Behzadnia<br>8935 Research Dr., #200<br>Irvine, CA 92618 |
| City of Irvine Atn Brooke Cupell<br>c/o Wilddan Financial Svcs<br>7500 N. Dreamy Draw Dr., #130<br>Phoenix, Arizona 85020 | Jackson Demarco<br>Attn SP Enriquez<br>2030 Main St., #1200<br>PO Box 19704<br>Irvine, CA 92623-9704 | Mackler Echt & Associates<br>Attn: Corporate Officer<br>9520 Jefferson Blvd., #E<br>Culver City, CA 90232 |
| CoStar Realty Information, Inc.<br>Attn: Brian Friedman<br>PO Box 791123<br>Baltimore, MD 21279-1123 | Jeff Bitetti<br>8 Tideline Bluff<br>Newport Coast, CA 92657 | Newmeyer & Dillion<br>Attn: Shawn E. Cowles<br>895 Dove Street, 5th Fl.<br>Newport Beach, CA 92660 |
| OCB Reprographics<br>Attn: Corporate Officer<br>17721 Mitchell North<br>Irvine, CA 92614 | TCS Network Consulting, Inc.<br>Attn: Kieth Hermance<br>9841 Irvine Center Dr., #150<br>Irvine, CA 92618 | Torry Lozano Construction<br>Attn: Torry Lozano<br>32025 Virginia Way<br>Laguna Beach 92651 |
| Pyro-Comm Systems, Inc.<br>Attn: Corporate Officer<br>15531 Container Lane<br>Huntington Beach, CA 92649-1530 | The Irvine Company<br>Attn: John Turner<br>550 Newport Center Drive<br>Newport Beach, CA 92660 | United Building Services<br>Attn: Charo Flores<br>868 Folsum Street<br>San Francisco, CA 94107 |
| South Coast Water<br>Attn: Corporate Officer<br>27881 La Paz Rd., #G-172<br>Laguna Niguel, CA 29677 | The Smith Guide, Inc.<br>Attn: Jim Smith<br>18430 Ward Street<br>Fountain Valley, CA 92708 | Ware Malcomb<br>Attn: Larry Armstrong<br>10 Edelman<br>Irvine, CA 92618 |
| **Utility**<br>Southern California Edison<br>Attn: Bankruptcy Desk<br>300 N. Lone Hill Ave.<br>San Dimas, CA 91773 | Tice, Gardener & Fujimoto<br>Attn: Dave Tice<br>8845 Research Dr., #100<br>Irvine, CA 92618 | State Fund Attn: Jim Reed<br>c/o Clarke Marine<br>245 Fischer Avenue, #D-8<br>Costa Mesa, CA 92626 |
| NEF 9/9/09<br>Sheppard Mullin Richter & Hampton LLP<br>Richard W. Brunette, Esq. | **Utility**<br>DirectTV<br>Attn: Corporate Officer<br>PO Box 60036<br>Los Angeles, CA 90060-0036 | **Utility**<br>AT&T Mobility<br>Attn: Corporate Officer<br>PO Box 6463<br>Carol Stream, IL 60197-6463 |

MAINDOCS-#133598-v1-BacchusUtilityMtn.DOC